UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| AMAZON.COM, INC.,<br><br>               Plaintiff,<br><br>   v.<br><br>CORYDORAS TECHNOLOGIES, LLC,<br><br>            Defendant. | Case No. 1:19-cv-01095-RP<br><br>**DEMAND FOR JURY TRIAL** |

**AMAZON.COM, INC.'S RESPONSE TO CORYDORAS TECHNOLOGIES, LLC'S
MOTION TO DISMISS OR TO TRANSFER OR STAY**

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ...............................................................................................1

II.  STATEMENT OF FACTS ................................................................................2

III.  LEGAL STANDARD .......................................................................................4

IV.  ARGUMENT ...................................................................................................4

    A.  The federal courts must resolve a declaratory judgment action brought by a manufacturer before duplicative customer suits irrespective of which action was first-filed ............................................................................................4

    B.  Corydoras provided no valid basis for this Court to decline to apply the customer suit doctrine as the Federal Circuit directs .................................7

        1.  The other manufacturer's devices in the customer suit against Best Buy are irrelevant .................................................................................8

        2.  The assertion of method claims and inducement theories against Best Buy does not prevent this Court from resolving the major issues of infringement...............................................................................10

        3.  Best Buy is purely a retailer of Amazon products and Corydoras has not alleged or proven otherwise ..................................................11

        4.  Corydoras's other reasons for not applying the customer suit doctrine similarly fail.........................................................................12

    C.  The Court cannot dismiss or transfer for improper venue under 28 U.S.C. § 1406 as venue in the Western District of Texas is proper ...................14

V.  CONCLUSION................................................................................................17

# TABLE OF AUTHORITIES

**CASES**                                                                                                  **PAGE(S)**

*Ambraco, Inc. v. Bossclip B.V.*,
    570 F.3d 233 (5th Cir. 2009) ..................................................................................4

*Belfer Cosmetics, LLC v. Nordstrom, Inc.*,
    No. H-15-683, 2016 WL 8792318 (S.D. Tex. Feb. 26, 2016) ..................................7

*Broadway National Bank v. Plano Encryption Technologies, LLC*,
    173 F. Supp. 3d 469 (W.D. Tex. 2016)..................................................................16

*Bullock v. Wash. Metro. Area Transit Auth.*,
    943 F. Supp. 2d 52 (D.D.C. 2013) ........................................................................16

*Bustos v. Lennon*,
    No. SA-11-CV-00837-OLG, 2012 WL 12882897 (W.D. Tex. May 18, 2012),
    aff'd, 538 F. App'x 565 (5th Cir. 2013) ................................................................15

*Card Activation Technologies v. Pier 1 Imports, Inc.*,
    No. 09 C 2021, 2009 WL 2956926 (N.D. Ill. Sept. 14, 2009)...............................11

*Carruth v. Michot*,
    No. A-15-CA-189-SS, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) ...................15

*Cellular Commc'ns Equip. v. Apple Inc.*,
    No. 6:14-cv-251, 2016 WL 6884648 (E.D. Tex. Aug. 26, 2016)............................12

*Cisco Sys, Inc. v. TiVo, Inc.*,
    No. C 12--02766 RS, 2012 WL 3279532 (N.D. Cal. Aug. 10, 2012)......................12

*ContentGuard Holdings, Inc. v. Google, Inc.*,
    No. 2:14-cv-00061-JRG, 2014 WL 1477670 (E.D. Tex. Apr. 15, 2014)...............10

*Corydoras Techs. LLC v. Best Buy Co., Inc.*,
    No. 2:19-cv-00304-JRG-RSP, Dkt. 1 (E.D. Tex. Sept. 4, 2019)......................2, 3, ?

*Delgado v. U.S. Att'y Gen.*,
    487 F.3d 855 (11th Cir. 2007) ...............................................................................17

*Dex Prods., Inc. v. Houghteling*,
    No. C 05-05126 SI, 2006 WL 1751903 (N.D. Cal. June 23, 2006)........................15

*EROAD Ltd. v. PerDiemCo, LLC*,
    No. 6:19-cv-00026-ADA, Dkt. 34 (W.D. Tex. Sep. 19, 2019) ..............................17

*GeoTag, Inc. v. Fred's, Inc.*,
    No. 2:13-2030-JPM-tmp, 2013 WL 2181166 (W.D. Tenn. May 20, 2013)..............9

*In re Dell Inc.*,
    600 F. App'x 728 (Fed. Cir. 2015) ..........................................................................5

*In re Google Inc.*,
    588 F. App'x 988 (Fed. Cir. 2014) ................................................................... *passim*

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014) ...............................................................1, 5, 13

*In re Telebrands Corp.*,
    773 F. App'x 600 (Fed. Cir. 2016) ....................................................................4

*Jama v. ICE*,
    543 U.S. 335 (2005) ........................................................................................17

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) .....................................................................6, 8

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ...............................................................1, 6, 7

*LG Elecs., Inc. v. Asustek Comps.*,
    126 F. Supp. 2d 414 (E.D. Va. 2000) ................................................................6

*Lowe v. MAC Fed. Credit Union*,
    No. SA-17-CV-1230-XR, 2018 WL 2422999 (W.D. Tex. May 29, 2018) ............15

*Mantissa Corp. v. Old Second Bancorp, Inc.*,
    No. 17 C 9175, 2018 WL 3059604 (N.D. Ill. June 20, 2018)............................11

*Neufeld v. Neufeld*,
    910 F. Supp. 977 (S.D.N.Y. 1996) ..................................................................16

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
    No. 12-088-RGA, 2012 WL 2803695 (D. Del. July 10, 2012) .............................9

*QFO Labs, Inc. v. Best Buy Stores, L.P.*,
    No. 17-5011, 2018 WL 3966313 (D. Minn. Aug. 17, 2018)...........................9, 13

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ........................................................................4, 5

*Select Retrieval, LLC v. ABT Elecs.*,
    No. 11 C 03752, 2013 WL 6576861 (N.D. Ill. Dec. 13, 2013)........................9, 12

*Select Retrieval, LLC v. L.L. Bean, Inc.*,
    No. 2:12-cv-00003-NT, 2013 WL 1099754 (N.D. Ill. Dec. 13, 2013) ..............7, 11

*Shifferaw v. Emson USA*,
    No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ..............6

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011), 657 F.3d .....................................................5, 6

*Tegic Communications Corp. v. Board of Regents of the University of Texas System*,
    458 F.3d 1335 (Fed. Cir. 2006) .....................................................................7, 8

*Telebrands Corp. v. Nat'l Express, Inc.*,
    No. 12-6671(FSH), 2013 WL 1598043 (D.N.J Apr. 11, 2013) ................................ 15

*UltimatePointer, L.L.C. v. Nintendo Co.*,
    No. 6:11-CV-496-LED, 2014 WL 12515338 (E.D. Tex. June 17, 2014) ............................. 11

*Ultra Prods., Inc. v. Best Buy Co.*,
    Inc., No. 09-1095 (MLC), 2009 WL 2843888, at *4 (D.N.J. Sept. 1, 2009) .......................... 11

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990) ................................ 14

## STATUTES AND RULES

28 U.S.C. § 1391 ................................................................................................. *passim*

28 U.S.C. § 1404 ................................................................................................. 13

28 U.S.C. § 1406 ............................................................................................. 2, 14

35 U.S.C. § 299 .................................................................................................. 9

Fed. R. Civ. P. Rule 12(b)(1) ................................................................................ 4

Fed. R. Civ. P. Rule 12(b)(3) ................................................................................ 4

## OTHER AUTHORITIES

157 Cong. Rec. H4426 ........................................................................................ 9

## I.      INTRODUCTION

Amazon brought this case to clear the cloud created over its Fire tablets and other technology when Corydoras sued Best Buy, Amazon's customer and a retailer of these devices, for patent infringement.  Federal Circuit law establishes this is Amazon's right as the supplier of the accused technology, *i.e.*, Amazon may bring a declaratory judgment action and the Court must resolve it before any suit against Amazon's customers can proceed.  *See*, *e.g., Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463-64 (Fed. Cir. 1990).  The law provides this for good reasons: Amazon is the party with the greatest incentive and ability to defend the accused technology; and suing customers first is an abusive practice that creates inefficiency and waste.  As Amazon pointed out in its motion to enjoin Corydoras from litigating claims against Amazon technology in the Best Buy case (Dkt. 13), the Federal Circuit has issued writs of mandamus twice to ensure that district courts observe this rule.  *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014); *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).

Faced with a choice between addressing the merits with Amazon and continuing its harassment of Best Buy, Corydoras chose the latter, and its motion to dismiss invites this Court to abuse its discretion in service of that choice.  Amazon concedes Corydoras filed its customer suit first.  But the customer suit doctrine is a well-established exception that prevents the Court from applying the first-to-file rule here, so that timing does not matter.  Every fact Corydoras argues somehow distinguishes its customer suit and places it beyond the Federal Circuit's express instructions is routine, having been addressed many times over in other abusive customer litigation that district courts properly stayed.  Specifically, that a customer suit includes claims against other manufacturer's devices does not matter; that a customer suit includes both apparatus and method claims and alleges the customer performed the method using the manufacturer's device does not

1

matter; and that a customer suit also includes inducement claims does not matter.  What matters is litigating this case will resolve the major issues of infringement related to the Amazon products in the Best Buy case, and for that reason this case must proceed first.

Corydoras's alternative request to dismiss or transfer for improper venue also lacks merit. Corydoras resides in this district under 28 U.S.C. § 1391(b)(1) and (c)(2), and "a substantial part of the events or omissions giving rise to the claim," *i.e.*, alleged infringement by Amazon's products, occurred in this district, under 28 U.S.C. § 1391(b)(2).  Venue is therefore proper here for two independent reasons, and the Court therefore cannot dismiss or transfer this case under 28 U.S.C. § 1406.

## II.     STATEMENT OF FACTS

On September 4, 2019, Corydoras Technologies, LLC filed a lawsuit in the Eastern District of Texas against Amazon's retailers Best Buy Co., Inc. and Best Buy Stores, L.P. (collectively, "Best Buy") alleging infringement of the following patents: Nos. 7,778,664 ("the '664 patent"), 7,945,256 ("the '256 patent"), 7,996,037 ("the '037 patent"), 8,024,009 ("the '009 patent"), and 8,731,540 ("the '540 patent) ("asserted patents").  (Dkt. 1-1, *Corydoras Techs. LLC v. Best Buy Co., Inc.*, Case No. 2:19-cv-00304-JRG-RSP, Dkt. 1 (E.D. Tex. Sept. 4, 2019).)  In its complaint, Corydoras purports to be the owner of all right, title, and interest in the asserted patents.  (*Id*. at ¶¶ 20, 40, 60, 80, 100.)  The complaint further alleges Best Buy infringes the asserted patents by using, selling, and/or offering for sale, Amazon's Fire tablets.  (*Id*. at ¶¶ 25, 45, 65, 85, 105.)  Corydoras's complaint makes clear that it is Amazon's technology—and not technology created or supplied by Best Buy—that is the basis of these infringement claims.  (*See id.*)

In the same complaint, Corydoras separately alleges infringement by Best Buy for its use and sale of technology from manufacturers other than Amazon: Microsoft, Dell, Alienware, HP,

Acer, Google, Nokia and BLU.  (*Id.* at ¶ 18.)  Amazon's technology has no connection with these other manufacturers, beyond the allegation that each of the accused technologies separately infringes the same patents.  (*Id.* at ¶¶ 25, 45, 65, 85, 105.)  Corydoras did not allege, for example, that Best Buy infringed by combining Amazon Fire devices with Microsoft devices, or that Dell supplies technology used in Amazon Fire devices, or the like.  (*See id.*)  In other words, Corydoras is attempting an end-run around on the one-defendant-per-lawsuit requirement in the America Invents Act ("AIA").  Instead of suing each manufacturer individually, as the AIA joinder rules require, Corydoras is attempting to join them in a single case by suing their customer.

Amazon filed this lawsuit on November 11, 2019, seeking declaration that Amazon's technology does not infringe those patents.  (Dkt. 1 at ¶¶ 27, 34, 41, 48, 55.)  In the complaint, Amazon explained Best Buy is only a retailer of the accused products and that any dispute about whether Amazon's technology infringes Corydoras's patents should be litigated in this Court alone.  (*Id.* at ¶¶ 3, 12.)  Amazon also alleged it has agreed to indemnify Best Buy.  (*Id.* at ¶¶ 7, 22.)  Amazon's complaint also placed Corydoras on notice that Amazon would seek to enjoin further prosecution of infringement claims against Best Buy that are based on Amazon technology.  (*Id.* at ¶¶ 3-4.)

On January 2, 2020, Corydoras filed its motion to dismiss, arguing the customer suit exception to the first-filed rule does not apply, and that venue is improper in the Western District of Texas.  (Dkt. 11 ("Mot.").)

On January 14, 2020, Amazon filed a motion to enjoin Corydoras from litigating customer suits, including its claims against Best Buy with respect to Amazon Fire tablets or technology.  (Dkt. 13.)  On the same day, Best Buy filed a motion to stay in the Eastern District of Texas, seeking to stay these same claims.  (Gregorian Decl., Ex. A.)  Neither motion seeks to preclude Corydoras from

litigating claims against Best Buy that do not relate to Amazon technology but instead accuse devices from the other manufacturers.  (*See* Dkt. 16-1; Gregorian Decl., Ex. B)

Corydoras is a limited liability company formed in Texas in 2006.  (Gregorian Decl., Ex. C.) Corydoras's current registered agent is Registered Agents Inc. with an address at 5900 Balcones Drive, Suite 100, Austin, TX 78731.  (*Id.*)  On November 12, 2019, Registered Agents Inc. accepted service of the complaint in this action on behalf of Corydoras.  (Dkt. 6.)  Corydoras has not challenged service or personal jurisdiction.

## III.    LEGAL STANDARD

On motion to dismiss for lack of subject matter jurisdiction or improper venue, the court must view all the facts in light most favorable to the plaintiff.  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009).  "Moreover, under both Rule 12(b)(1) and Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."  *Id*.  To the extent there are factual disputes, the court must resolve those disputes in favor of the plaintiff.  *See id.* (citing *Murphy v. Schneider Nat'l Inc*., 362 F.3d 1133, 1138-40 (9th Cir. 2004) (holding that, in the absence of factual findings made by the district court based upon an evidentiary hearing, affidavits and other evidence submitted by the non-moving party in the context of a Rule 12(b)(3) challenge are to be viewed in the light most favorable to that party).).

## IV.    ARGUMENT

### A.    The federal courts must resolve a declaratory judgment action brought by a manufacturer before duplicative customer suits irrespective of which action was first-filed.

Under the first-to-file rule, "when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases," and "the usual rule is for the court of first jurisdiction to resolve the issues."  *In re Telebrands Corp*., 773 F. App'x 600, 602 (Fed. Cir. 2016); *See Save*

*Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). Customer suits are an exception

to this rule, however. In such cases, "litigation against or brought by the manufacturer of infringing

goods takes precedence over a suit by the patent owner against customers of the manufacturer." *In

re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015) (quoting *Katz*, 909 F.2d at 1464). In other words,

a declaratory judgment action brought by the supplier of accused technology—like this case—must

be resolved before an infringement suit against a customer. *See In re Nintendo of Am., Inc.*, 756 F.3d

at 1365 (customer suit doctrine "exists to avoid, if possible, imposing the burdens of trial on the

customer"); *see also In re Google*, 588 F. App'x 988.[1]

   Application of both the first-to-file rule and the customer suit doctrine require the same

essential showing: that the cases substantially overlap such that allowing both to proceed would

require two different courts to resolve the same major issues. *See Spread Spectrum Screening LLC

v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011), 657 F.3d at 1357 ("[W]e clarified that

the manufacturer's case need only have the potential to resolve the 'major issues' concerning the

claims against the customer—not every issue—in order to justify a stay of the customer suits.")

(citing *Katz*, 909 F.2d at 1464); *In re Google*, 588 F. App'x. at 991 (authorizing district courts to stay

the customer suit if "substantial savings of litigation resources can be expected."). Corydoras has

itself already argued forcefully in its motion that this standard is met here.[2] And it is correct: both

suits seek to resolve whether the sale, offer for sale, or use of Amazon's Fire tablets infringes the

same set of patents. These issues should be resolved in a single proceeding. And Amazon is the

most efficient party to litigate them because Amazon designed and supplies the accused technology.

---

[1] In its motion for preliminary injunction, Amazon provides a detailed discussion of these two
mandamus cases and the numerous district court cases following them. (*See* Dkt. 13 at 3-5.)

[2] Mot. at 10 ("The two suits substantially overlap because both suits involve the same patents and
include the same Amazon products" and "[t]his action substantially overlaps with the E.D. Tex
Action as to whether the accused Amazon devices infringe the asserted patents.").

While early cases discuss whether the manufacturer's case would be "dispositive" of the customer suit, the Federal Circuit has never required complete identity of issues to enjoin or stay a later filed customer case. *See Katz*, 909 F.2d at 1463; *see also In re Google*, 588 F. App'x. at 991. In *Katz* itself, for example, the court noted that while "there may be additional issues" in the customer action, "their prosecution will be advanced" if the manufacturer "is successful on the major premises" in its case. *Id.* at 1464; *see also Spread Spectrum* 657 F.3d at 1357.[3] That said, Amazon's declaratory judgment action *will* dispose of the claims against its technology in the customer suit, and so the higher standard is met here. If Amazon wins a judgment of non-infringement in this case, Corydoras cannot prove infringement by Amazon's customer Best Buy. If, on the other hand, Corydoras prevails on its anticipated infringement counterclaims in this case, it will win a damages award from Amazon and would be unable to recover in a later action against Amazon's customers based on their sale of the same technology. *See Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, *3 (E.D. Tex. Mar. 18, 2010) (plaintiff cannot receive a double recovery of damages from sales by retailers and manufacturers); *LG Elecs., Inc. v. Asustek Comps.*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000) ("If the court does find them liable, and allows LGE to collect royalties from Asustek and Asus, LGE cannot then in turn collect royalties from the entity to whom the infringer sells the product."). Amazon's declaratory judgment action will therefore resolve Corydoras's claims against not just Best Buy, but any Amazon customers.

Finally, while judicial economy is a guiding principle behind the customer suit exception, it

---

[3] In *Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989), the Federal Circuit declined to apply the customer suit doctrine to stay claims against automaker GMC based on stereo systems by Motorola, because Motorola's declaratory judgment action would not resolve all claims in the customer suit, including non-patent tort claims. *Id.* at 1080-81. But the Federal Circuit repudiated this part of *Kahn* as inconsistent in its later opinion in *Katz*, which clarified that the customer suit doctrine applies so long as the manufacturer's case has the potential to resolve the "major" issues in the customer suits. *Spread Spectrum*, 657 F.3d at 1358.

is not the only one.  "At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit . . . . it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464.  In other words, the question before this Court is not merely how to ensure the cases are litigated most efficiently.  The customer suit doctrine protects Amazon's interest as a supplier in protecting its customers and recognizes its superior position to defend a patent infringement suit concerning its own technology.  *See Belfer Cosmetics, LLC v. Nordstrom, Inc.*, No. H-15-683, 2016 WL 8792318, at *3 (S.D. Tex. Feb. 26, 2016) (stating that retailer's overall interest in a product is small relative to product developer); *Select Retrieval*, *LLC v. L.L. Bean, Inc.*, No. 2:12-cv-00003-NT, 2013 WL 1099754, at *2 (N.D. Ill. Dec. 13, 2013) ("The customers . . . lack the same understanding of the underlying technology; Adobe is in a superior position to defend the products it developed.").  For these reasons, the Court must apply the customer suit doctrine if it determines, as both parties have now argued, that this case substantially overlaps with the customer suit against Best Buy.

### B.    Corydoras provided no valid basis for this Court to decline to apply the customer suit doctrine as the Federal Circuit directs.

Corydoras offers several other reasons the Court should reject the customer suit doctrine and dismiss the case.  None of them are valid or relevant.  It argues, relying on *Tegic Communications Corp. v. Board of Regents of the University of Texas System*, 458 F.3d 1335 (Fed. Cir. 2006), these are all factors the Court must weigh as part of a balancing test.  (Mot. at 8.)  As an initial matter, that is incorrect and another encouragement for this Court to commit legal error.  The standard this Court must apply is whether the manufacturer's suit substantially overlaps with the customer suit such that it will resolve significant issues of infringement.  *Tegic* did not hold to the contrary.  There, the

Federal Circuit considered whether the University of Texas had waived sovereign immunity with respect to a declaratory judgment suit by suing Tegic customers in a different forum. *Tegic*, 458 F.3d at 1343.  The court found the customer suit doctrine did not "override" the university's sovereign immunity or effect a waiver, particularly given the fact the university had already covenanted not to sue Tegic.  *Id*.  While *Tegic* lists reasons its outcome was efficient, its discussion is dicta and did not purport to create a multi-factor test or instruct other courts how to apply the customer suit doctrine. *See id.*

Corydoras's arguments are also each irrelevant or incorrect as discussed below.

### 1.    The other manufacturer's devices in the customer suit against Best Buy are irrelevant.

The fact that Corydoras has also accused Best Buy of infringement based on products made by other manufacturers does not change the result here.  No allegations in Corydoras's customer suit connect Amazon's devices to those of the other manufacturers.  For example, the complaint alleges no connection between Amazon's Fire tablets and, *e.g.*, Microsoft's Surface laptops, other than they are both distributed by Best Buy and are both alleged to infringe Corydoras's patents.  (*See* Dkt. 1-1, ¶ 18).  The claims against each manufacturer's devices are distinct, and the case before this Court will resolve the claims against Best Buy related to Amazon's products.  Accordingly, nothing prevents this Court from enjoining the claims against Amazon products or the Eastern District of Texas court from staying them as requested.

Corydoras's argument is a sleight of hand.  The customer suit exception may not apply where a plaintiff's single infringement theory accuses a device combining technology from multiple manufacturers.  *E.g., Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989) (suggesting that GM combined Motorola's circuits with other components to make the accused stereo receivers).  This makes sense where the infringement theory is not about the specific device

supplied by any one of the manufacturers, but the combination by the customer or the customer's own technology.[4]   But that is not what Corydoras argued here; Corydoras is not alleging that Best Buy infringes the patents because it combined Amazon Fire devices with the other manufacturer's accused devices.   Instead, Corydoras argues its claims against Amazon devices must proceed in the Best Buy case because Corydoras joined claims against unrelated devices from different manufacturers in a single suit.

This is a wholly different scenario, one that is exactly what the AIA sought to prevent.   The joinder provision of the AIA prohibits joining multiple manufacturers in a single suit.   *See* 35 U.S.C. § 299; Dkt. 13 at 6.   Congress enacted § 299 to "end[] the abusive practice of treating as codefendants parties who make completely different products and have no relation to each other."   157 Cong. Rec. H4426 (daily ed. June 22, 2011).   Courts address this fact pattern by staying claims against one or more individual manufacturer's technology.   *See, e.g., QFO Labs, Inc. v. Best Buy Stores, L.P.*, No. 17-5011 (JRT/TNL), 2018 WL 3966313, at *3, *5 (D. Minn. Aug. 17, 2018) (staying suit against retailers of Parrot drones, including Best Buy, where plaintiff accused both Parrot and non-Parrot drones). That should be the result here.   Allowing Corydoras to maintain claims against unrelated products in the same action defeats Congress's express preference that patentees file such claims as separate actions.[5]

---

[4] This is not necessarily the case, however, and courts have applied the customer suit doctrine in cases involving multiple suppliers.   *See Pragmatus Telecom, LLC v. Advanced Store Co.*, No. 12-088-RGA, 2012 WL 2803695, at *4 (D. Del. July 10, 2012) (staying claims against LivePerson, Inc.'s customers even where the customers allegedly also used "other, non-LivePerson technology for their infringing systems"); *Select Retrieval, LLC v. ABT Elecs.*, No. 11 C 03752, 2013 WL 6576861, at *4 (N.D. Ill. Dec. 13, 2013) (staying suit against Adobe's customers even where Adobe allegedly was "not the sole supplier of the allegedly infringing technology for the entire period of the alleged infringement"); *GeoTag, Inc. v. Fred's, Inc.*, No. 2:13-2030-JPM-tmp, 2013 WL 2181166, at *5 (W.D. Tenn. May 20, 2013) (staying suit against customer of Google's mapping service even where the customer used a different service for a certain time period).

[5] To the extent Corydoras argues separate cases would allow similar invalidity defenses to be

Corydoras cites *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-00061-JRG, 2014 WL 1477670 (E.D. Tex. Apr. 15, 2014), to support its position.  But it fails.  There, Google's manufacturer suit would not have significantly simplified the customer suits because the customer infringement theories varied.  Google itself admitted this: infringement issues "could vary depending on each customer's accused use of Google's technology on the customer's various accused devices." *Id.* at *3.  Moreover, the claims could not easily be separated, as the very same devices were accused of using three different infringing technologies, only one of which was Google's.  *Id.* at *1, *3.  All accused devices in *ContentGuard* would have remained at issue even if the Google-related infringement theory was resolved, and its facts therefore bear no resemblance to this case.

### 2. The assertion of method claims and inducement theories against Best Buy does not prevent this Court from resolving the major issues of infringement.

Similarly, neither the allegation that Best Buy has induced infringement nor the allegation that Best Buy infringed method claims by using Amazon devices matters here.  This Court's resolution of the alleged infringement of the patents by Amazon's devices will resolve or vastly simplify those claims.  If this Court finds Amazon does not infringe, Best Buy can have no inducement liability for providing instructions or set-up services for the same devices.[6]  Under those circumstances, Best Buy also cannot infringe a method claim where the steps of the alleged method are performed using the non-infringing Amazon device.  If Amazon is found to infringe, then Corydoras will recover a reasonable royalty from Amazon that covers its customers' downstream

---

decided in different cases, the AIA joinder provision shows Congress has already accepted this consequence.

[6] Although Corydoras placed great emphasis on "services that Best Buy provides to its customers" (*see, e.g.*, Mot. at 3, 12), the only such allegation in its Eastern District of Texas complaint is related to only one of the five asserted patents.  (*See* Dkt. 1-1, ¶ 19 (discussing Best Buy's "Smart Light Setup" service in connection with the "remote control" claim element of U.S. Patent No. 7,945,256).)

use of the same devices.

For this reason, the assertion of induced infringement or method claims does not matter here, and courts routinely apply the customer suit doctrine where similar claims are asserted.  In *Ultra Prods., Inc. v. Best Buy Co.*, Inc., No. 09-1095 (MLC), 2009 WL 2843888, at *4 (D.N.J. Sept. 1, 2009), the patent owner alleged induced infringement in the retailers suit, arguing that "far from merely reselling the power supplies to the ultimate end users with instructions previously provided by the manufacturers, the [retailer defendants] induced these end users to infringe the '293 Patent through advertisements and Web sites indicating the infringing installation of the power supplies in the computer case."  The court nevertheless found the customer suit doctrine applicable, because "[a]lthough the claims against the [retailer defendants] may raise some additional issues regarding the specific acts of inducement they allegedly committed, such issues nevertheless appear very similar, if not identical, to the issues as to the respective manufacturers' liability for inducement." *Id.* at *6; *see also UltimatePointer, L.L.C. v. Nintendo Co.*, No. 6:11-CV-496-LED, 2014 WL 12515338, at *4 (E.D. Tex. June 17, 2014) ("[I]t would be difficult to imagine a situation in which only the Retailers were found to have induced infringement.  Thus, if Nintendo is not found to infringe, then UltimatePointer likely has no infringement claims against the Retailers regarding those Nintendo products."); *Mantissa Corp. v. Old Second Bancorp, Inc.*, No. 17 C 9175, 2018 WL 3059604, at *5-9 (N.D. Ill. June 20, 2018) (staying customer-suit in which method claims were asserted against the customer); *Select Retrieval v. L.L Bean*, 2013 WL 1099754, at *4-5 (same); *Card Activation Technologies v. Pier 1 Imports, Inc.*, No. 09 C 2021, 2009 WL 2956926, at *3-5 (N.D. Ill. Sept. 14, 2009) (same).

### 3. Best Buy is purely a retailer of Amazon products and Corydoras has not alleged or proven otherwise.

Corydoras's suggestion that Best Buy is not merely a retailer, and may somehow be involved

in the design or manufacture of Amazon's technology, is wholly unsupported.  (Mot. at 13.)  Best

Buy's business is as a retailer of technology products, and that is its role with respect to the accused

Amazon Fire devices.  There is no allegation in Corydoras's complaint that Best Buy is involved in

the design or manufacture of the Amazon tablets or that Best Buy alters the Amazon tablet

technology in any way relevant to infringement. (Dkt. 1-1; *see also* Hampton Decl., ¶ 2).  *See*

*Cellular Commc'ns Equip. v. Apple Inc.*, No. 6:14-cv-251, 2016 WL 6884648, at *2 (E.D. Tex. Aug.

26, 2016) (staying customer suits where plaintiff "proffered no evidence suggesting that the

[customers] had any meaningful role in the design or manufacture of the component that implements

the patented . . . functionality").  In any event, the Federal Circuit does not require a manufacturer to

show its customer is a retailer for the customer suit doctrine to apply.  The doctrine applies equally

to downstream customers and users.  *In re Google*, 588 F. App'x at 989 (rejecting "mere reseller"

requirement and applying the doctrine to non-retailer mobile phone manufacturers using Google's

operating system).

> **4.**     **Corydoras's other reasons for not applying the customer suit doctrine similarly fail.**

Corydoras offers a grab-bag of additional arguments and each lacks merit:

*That Best Buy is a sophisticated party is irrelevant*.  Corydoras argues Best Buy is well

prepared to defend an infringement suit.  (Mot. at 13.)  But that is irrelevant.  Part of the *rationale*

for the customer suit doctrine is that a manufacturer is *best* positioned to defend its own technology.

*See, e.g., Select Retrieval, LLC v. ABT Elecs.*, No. 11 C 03752, 2013 WL 6576861, at *2 (N.D. Ill.

Dec. 13, 2013).  No case holds that applying the doctrine requires the Court to engage in a free-

floating inquiry into the sophistication of the customer,[7] and numerous decisions stay claims against

---

[7] *Cisco Sys, Inc. v. TiVo, Inc.*, No. C 12--02766 RS, 2012 WL 3279532, at *4 (N.D. Cal. Aug. 10, 2012) is not to the contrary.  There, the court did not rule based on the customer suit doctrine.  It

customers with patent litigation experience. *See  In re Google*, 588 F. App'x at 989 (staying customer suits where Google's customers included Samsung, LG, etc.); *In re Nintendo of Am., Inc*., 756 F.3d 1363 (staying customer suit where Nintendo's retailers included Best Buy, Target and Toys 'R' Us, etc.); *QFO Labs*, 2018 WL 3966313, at *1 (staying customer suits where Parrot's retailers included Best Buy, Target and Amazon).   Regardless, there can be no question Amazon is clearly best positioned as the designer and manufacturer of the Fire tablets to defend its own technology.

  *The availability of intervention is irrelevant.*  Corydoras's suggestion that Amazon could, if it wished, move to intervene in the customer suit is irrelevant.  (*See* Mot. at 14.)  Intervention is nearly always available to a manufacturer whose customer is sued.  The entire point of the customer suit doctrine is that the manufacturer does *not* have to intervene in one or more abusive customer suits in the plaintiff's chosen forum to defend the technology.  *See, e.g.*, *In re Nintendo*, 756 F.3d at 1365-66.  Moreover, other than its own forbearance, there is literally nothing stopping Corydoras from filing new actions asserting the identical patent infringement claims against other retailers and customers of Amazon Fire tablets.  There is, therefore, no guarantee that requiring Amazon to intervene in the Best Buy case will lead to an efficient result or save judicial resources.  Finally, by inviting the manufacturers to intervene in its customer suit, Corydoras seeks the *exact result—* improper circumvention of the AIA joinder rule—which Amazon complained of above.

  *The familiarity of the court with Corydoras's patents and the "interests of justice" are irrelevant.*  Finally, Corydoras argues that factors considered in a § 1404(a) motion to transfer weigh against applying the customer suit doctrine.  But Corydoras did not move to transfer under § 1404(a), and it cannot simply mix-and-match the different legal standard that applies to this separate form of

---

analyzed the traditional "convenience factors" for assessing a motion to transfer under § 1404.  *Id.* at *6-8.

relief.  Regardless, these arguments also lack merit.  The district court in the Eastern District has not

invested any significant effort into the case.  It has merely set a schedule, with a *Markman* hearing

that will not occur until July 23, 2020, almost six months from now.  Moreover, Corydoras had notice

in November 2019 that it had sued Amazon's customer improperly and Amazon would seek to enjoin

those claims.  Finally, the "interests of justice" favor following Federal Circuit law and applying the

customer suit doctrine to protect Amazon's interest in defending its own technology and uphold

Congress's stated intent in the AIA joinder provision.

### C.    The Court cannot dismiss or transfer for improper venue under 28 U.S.C. § 1406 as venue in the Western District of Texas is proper.

Venue for a declaratory judgment action alleging a patent is not infringed is governed by the

general venue statute.  *See VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574, 1583

(Fed. Cir. 1990), *abrogated on other grounds by TC Heartland v. Kraft Foods Grp. Brands*, 137

S. Ct. 1514 (2017).  The evidence and well-pleaded allegations of Amazon's declaratory judgment

complaint establish the Western District of Texas is a proper venue for this case under that statute,

on two independent grounds: (1) Corydoras resides in this district; and (2) a substantial part of the

acts giving rise to the complaint took place in this district.  *See* 28 U.S.C. § 1391(b)(1), (2).  The

Court should therefore deny Corydoras's request that the Court dismiss for improper venue or

transfer the case to the Eastern District of Texas.  (*See* Mot. at 15-16; 28 U.S.C. § 1406.)

First, this district is a proper venue because Corydoras, a Texas LLC, resides here according

to the venue statute.  A case may be brought in any district where the defendant resides.  28 U.S.C.

§ 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides,

if all defendants are residents of the State in which the district is located").  In turn, an entity

defendant like Corydoras is deemed to reside in any district in which it is subject to the Court's

personal jurisdiction.  28 U.S.C. § 1391(c)(2) ("an entity . . . whether or not incorporated, shall be

deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). Corydoras has not challenged personal jurisdiction (*see* Mot. at 15-16), and that is correct: as an LLC, Corydoras is subject to personal jurisdiction in its state of formation. *See Lowe v. MAC Fed. Credit Union*, No. SA-17-CV-1230-XR, 2018 WL 2422999, at *2 (W.D. Tex. May 29, 2018); *see also Carruth v. Michot*, No. A-15-CA-189-SS, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015); *Bustos v. Lennon*, No. SA-11-CV-00837-OLG, 2012 WL 12882897, at *5 (W.D. Tex. May 18, 2012) , aff'd, 538 F. App'x 565 (5th Cir. 2013). Corydoras's registered agent is also located in Austin, Texas and accepted service of the complaint in this action on behalf of Corydoras. (Gregorian Decl., Ex. C; Dkt. 6.) Corydoras is subject to personal jurisdiction in Texas and thus venue is proper here under § 1391(c)(2).

Second, this district is a proper venue because a substantial part of the alleged infringing conduct took place here. Venue is proper in any judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In a declaratory judgment action regarding patent infringement, that means "where the allegedly infringing actions took place, not the district where the patent owner resides." *See Dex Prods., Inc. v. Houghteling*, No. C 05-05126 SI, 2006 WL 1751903, at *2 (N.D. Cal. June 23, 2006); *see also Telebrands Corp. v. Nat'l Express, Inc.*, No. 12-6671(FSH), 2013 WL 1598043, at *6-7 (D.N.J Apr. 11, 2013) (finding venue proper under § 1391(b)(2) where the allegedly infringing products were manufactured in the district). Here, Corydoras expressly alleged in its own complaint that Best Buy "offered for sale, sold, and/or used" the accused products "in the State of Texas." (Dkt. 1-1 at 2-3.) These activities occurred within the Western District of Texas, as Best Buy has numerous stores in the district, including several in Austin alone, at which it offers for sale and sells each of the Amazon accused

products.  (*See* Hampton Decl., ¶¶ 3-7, Exs. 1-7.)  For its part, Amazon has two offices in Austin and around 1,200 employees there, including potential witnesses that work on the design and development of the accused products.  (Dkt. 1 ("Complaint"), ¶ 10.)  A substantial part of the alleged infringing conduct therefore occurred in this district, and venue is proper here for this reason as well.[8]

Corydoras argues it does not "reside" in this district because it lacks sufficient contacts to establish personal jurisdiction if the Western District of Texas were treated as its own separate state.  (*See* Mot. at 15 (citing 28 U.S.C. § 1391(d)).)  As an initial matter, this argument is wholly irrelevant to rebut the fact that under § 1391(b)(2) proper venue exists here based on the location of the alleged infringing conduct.  In other words, even if Corydoras did not "reside" here, venue is still proper for an independent reason and there are no grounds to dismiss or transfer.  That aside, Corydoras's argument is incorrect.  The portion of the statute on which Corydoras relies, § 1391(d), by its own terms applies only to corporations and not unincorporated associations such as Corydoras Technologies LLC.  Section 1391(d) is entitled "Residency of *corporations* in states with multiple districts," and provides that where there are several federal districts in a state, a "*corporation*" is deemed to reside in any district in which its contacts would subject it to personal jurisdiction at the time an action is commenced, if that district were a separate state.  28 U.S.C. § 1391(d) (emphasis added).  Neither the Supreme Court nor the Fifth Circuit have applied this statute to determine the residency of an unincorporated association like an LLC, and this Court should apply the statute as written.[9]  Indeed, in the residency sections of the venue statute Congress refers expressly to both

---

[8] To be clear, this portion of the statute requires only that *a* substantial portion of relevant events occurred in the district, not that the *most* substantial portion of the events occurred there.  *See, e.g., Bullock v. Wash. Metro. Area Transit Auth.*, 943 F. Supp. 2d 52 (D.D.C. 2013); *Neufeld v. Neufeld*, 910 F. Supp. 977 (S.D.N.Y. 1996).

[9] Although *Broadway National Bank v. Plano Encryption Technologies, LLC*, 173 F. Supp. 3d 469 (W.D. Tex. 2016) purported to apply § 1391(d) to an LLC, it did so without considering this

"corporations" (in § 1391(d)) and "entit[ies] . . . whether or not incorporated" (in § 1391(c)(2)), making clear that it understands the difference. *See Jama v. ICE*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."); *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling.").

Finally, even if § 1391(d) applies, Corydoras has sufficient contacts with the Western District of Texas such that it would be subject to personal jurisdiction here if this district is treated as its own state.  Judge Albright considered this precise issue and came to the same conclusion in *EROAD Ltd. v. PerDiemCo, LLC*, Case No. 6:19-cv-00026-ADA, Dkt. 34 (W.D. Tex. Sep. 19, 2019) (Gregorian Decl., Ex. D).  There, the defendant LLC argued its only connection to the Western District was its registered agent.  *Id.* at 14.  The district court found that argument "unpersuasive":

> PDC is a Texas limited liability company formed by filing a Certificate of
> Formation with the Secretary of State in this District.  Under the facts of this case,
> PDC's most substantial contacts in Texas is in the Western District.

*Id.*  Therefore, "just as a corporation is subject to general personal jurisdiction in its place of incorporation" the defendant was "subject to personal jurisdiction in the Western District of Texas" for purposes of § 1391(d).  *Id.* at 11-12.  Venue in this district is proper and the Court should not dismiss or transfer.

## V.     CONCLUSION

For the foregoing reasons, Amazon respectfully requests the Court deny Corydoras's Motion to Dismiss or to Transfer or Stay.

---

important issue of statutory interpretation.

Respectfully, submitted,

*Of Counsel:*

Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel: (512) 263-2165
Fax: (512) 263-2166

*/s/ Todd R Gregorian*

J. David Hadden, CSB No. 176148
Email:  dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
Email: sshamilov@fenwick.com
Ravi R. Ranganath, CSB 272981
Email: rranganath@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

Todd R. Gregorian, CSB No. 236096
Email: tgregorian@fenwick.com
Min Wu, CSB No. 307512
Email: min.wu@fenwick.com
FENWICK & WEST LLP
555 California Street
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

*Counsel for* AMAZON.COM, INC.

## CERTIFICATE OF SERVICE

The foregoing document was filed under the Court's CM/ECF system, automatically effecting service on counsel of record for all other parties who have appeared in this action on the date of such service.

*/s/ Todd R Gregorian*
Todd R. Gregorian